**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| ARLINGTON TECHNOLOGIES LLC,<br><br>Plaintiff,<br><br>v.<br><br>T-MOBILE US, INC., T-MOBILE USA, INC., SPRINT LLC, SPRINT SOLUTIONS LLC, AND SPRINT SPECTRUM LLC,<br><br>Defendant. | C.A. NO. 2:25-CV-00279-JRG-RSP |

**DEFENDANTS' ANSWER TO PLAINTIFF'S COMPLAINT, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND JURY DEMAND**

Defendants T-Mobile US, Inc., T-Mobile USA, Inc., Sprint LLC, Sprint Solutions LLC, and Sprint Spectrum LLC (collectively, "T-Mobile" or "Defendants")[1] hereby respond to the Complaint for Patent Infringement, Dkt. No. 1 ("Complaint"), of Plaintiff Arlington Technologies, LLC ("Arlington" or "Plaintiff"), with the following Answer, Affirmative Defenses, and Counterclaims. Any allegations not expressly admitted, denied, or explained are denied, and Defendants specifically deny that Plaintiff is entitled to any relief whatsoever from Defendants.

---

[1] T-Mobile US, Inc. is a holding company that does not provide any products, services, or networks, and Sprint LLC, Sprint Solutions LLC, and Sprint Spectrum LLC are wholly-owned subsidiaries of T-Mobile USA, Inc. Defendants deny that any entity other than T-Mobile USA, Inc. is a properly named party to this lawsuit. Defendants will work with Arlington to effectuate an agreed dismissal of all parties other than T-Mobile USA, Inc.

## THE PARTIES[2]

1. T-Mobile lacks knowledge or information sufficient to form a belief as to the truth of the allegations, if any, contained in paragraph 1, and on that basis, denies them.

2. T-Mobile admits that T-Mobile US, Inc. is a Delaware corporation with a regular and established place of business at 12920 SE 38th Street, Bellevue, Washington 98006 that may be served with process through a registered agent for service, the Corporation Service Company. T-Mobile lacks knowledge or information sufficient to form a belief as to the truth of the allegations, if any, regarding the address of Corporation Service Company contained in paragraph 2, and on that basis, denies them.

3. T-Mobile admits that T-Mobile USA, Inc. is a Delaware corporation with a regular and established place of business at 12920 SE 38th Street, Bellevue, Washington 98006 that may be served with process through a registered agent for service, the Corporation Service Company. T-Mobile lacks knowledge or information sufficient to form a belief as to the truth of the allegations, if any, regarding the address of Corporation Service Company contained in paragraph 3, and on that basis, denies them.

4. T-Mobile admits that Sprint LLC is a Delaware corporation. Except as expressly admitted, T-Mobile denies the remaining allegations, if any, contained in paragraph 4.

5. T-Mobile admits that Sprint Solutions LLC is a Delaware corporation. Except as expressly admitted, T-Mobile denies the remaining allegations, if any, contained in paragraph 5.

6. T-Mobile admits that Sprint Spectrum LLC is a Delaware corporation. Except as expressly admitted, T-Mobile denies the remaining allegations, if any, contained in paragraph 6.

---

[2] Headings are provided for convenience only and are not an admission.

7. T-Mobile admits that T-Mobile USA, Inc. operates one or more wireless telecommunications networks to provide wireless telecommunications products and services in the United States under brand names including, but not limited to, "T-Mobile" and "Sprint." T-Mobile admits that T-Mobile US, Inc. acquired Sprint Corporation in 2020. Except as expressly admitted, T-Mobile denies the remaining allegations, if any, contained in paragraph 7.

8. T-Mobile admits that T-Mobile USA, Inc. develops and sells wireless telecommunications products and services to customers, including in the Eastern District of Texas. Except as expressly admitted, T-Mobile denies the remaining allegations, if any, contained in paragraph 8.

9. T-Mobile admits that T-Mobile USA, Inc. operates the website t-mobile.com and that it provides the information, product and service offerings, and technical and service support found on that website. T-Mobile admits that the website and its affiliated service and products are available within the Eastern District of Texas. Except as expressly admitted, T-Mobile denies the remaining allegations, if any, contained in paragraph 9.

10. T-Mobile admits that this case purports to be an action for patent infringement. T-Mobile denies that any of the five identified Defendants has infringed or is infringing any valid claim of Arlington's patents. Except as expressly admitted, T-Mobile denies the remaining allegations, if any, contained in paragraph 10.

11. T-Mobile admits that T-Mobile USA, Inc. provides wireless telecommunication products and services to customers within the Eastern District of Texas. Except as expressly admitted, T-Mobile denies the remaining allegations, if any, contained in paragraph 11.

12. T-Mobile admits that T-Mobile USA, Inc. provides wireless telecommunication products and services to customers within the Eastern District of Texas. Except as expressly admitted, T-Mobile denies the remaining allegations, if any, contained in paragraph 12.

**JURISDICTION AND VENUE**

13. T-Mobile admits that this case purports to be an action for patent infringement. T-Mobile admits that this Court has subject matter jurisdiction over patent infringement cases.

14. T-Mobile USA, Inc. consents, for purposes of this action only, to the personal jurisdiction of this Court. T-Mobile admits that T-Mobile USA, Inc. does business in this District and this State. T-Mobile denies that it has infringed or is infringing any valid claim of Arlington's patents in this State or District or anywhere else. Except as expressly admitted, T-Mobile lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations, if any, contained in paragraph 14, and on that basis, denies them.

15. T-Mobile admits that T-Mobile USA, Inc. does business in this District and this State. T-Mobile denies that it has infringed or is infringing any valid claim of Arlington's patents in this State or District or anywhere else. Except as expressly admitted, T-Mobile lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations, if any, contained in paragraph 15, and on that basis, denies them.

16. T-Mobile admits that T-Mobile USA, Inc. has a corporate office in this District and this State located at 3560 Dallas Pkwy, Frisco, Texas 75034. T-Mobile admits that T-Mobile USA, Inc. does business in this District and this State. T-Mobile denies that it has infringed or is infringing any valid claim of Arlington's patents in this State or District or anywhere else. Except as expressly admitted, T-Mobile lacks knowledge or information sufficient to form a belief as to

the truth of the remaining allegations, if any, contained in paragraph 16, and on that basis, denies them.

17. T-Mobile admits that T-Mobile USA, Inc. does business in this District and this State and derives revenues from that business. T-Mobile denies that it has infringed or is infringing any valid claim of Arlington's patents in this State or District or anywhere else. T-Mobile denies that it has derived revenues from infringing any valid claim of Arlington's patents in this State or District or anywhere else. Except as expressly admitted, T-Mobile lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations, if any, contained in paragraph 17, and on that basis, denies them.

18. T-Mobile admits that T-Mobile USA, Inc. does business in this District and this State and derives revenues from that business. T-Mobile denies that it has infringed, is infringing, or has induced infringement of any valid claim of Arlington's patents in this State or District or anywhere else. T-Mobile denies that it has derived revenues from infringing or inducing infringement of any valid claim of Arlington's patents in this State or District or anywhere else. Except as expressly admitted, T-Mobile lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations, if any, contained in paragraph 18, and on that basis, denies them.

19. T-Mobile admits that T-Mobile USA, Inc. does business in this District and this State. T-Mobile USA, Inc. consents, for purposes of this action only, to the personal jurisdiction of this Court. Except as expressly admitted, T-Mobile lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations, if any, contained in paragraph 19, and on that basis, denies them.

20. T-Mobile admits that venue is proper in this case in this District pursuant to 28 U.S.C. § 1400(b), but denies that venue is convenient under 28 U.S.C. § 1404. T-Mobile admits that T-Mobile USA, Inc. has a corporate office in this District and this State located at 3560 Dallas Pkwy, Frisco, Texas 75034. T-Mobile admits that T-Mobile USA, Inc. does business in this District and this State. T-Mobile expressly denies that it has infringed or is infringing any valid claim of Arlington's patents in this District or anywhere else. Except as expressly admitted, T-Mobile denies the remaining allegations, if any, contained in paragraph 20.

21. T-Mobile admits T-Mobile US, Inc. and T-Mobile USA, Inc. have previously litigated patent infringement cases before the Court in this District, although T-Mobile US, Inc., Sprint LLC, Sprint Spectrum LLC, and Sprint Solutions LLC have been dismissed from those cases as not the proper defendant in at least some instances. Except as expressly admitted, T-Mobile denies the remaining allegations, if any, contained in paragraph 21.

## DEFENDANT'S ALLEGED PRE-SUIT KNOWLEDGE OF ITS ALLEGED INFRINGEMENTS

22. T-Mobile admits that T-Mobile USA, Inc. received a letter from David Pridham, Chief Executive Officer of Dominion Harbor, regarding Arlington's patent portfolio on February 10, 2025, less than a month before Arlington filed this suit. T-Mobile admits the letter identified United States Patent Nos. 7,193,986, 7,324,491, 7,408,925, 8,886,789, and 9,398,055. T-Mobile expressly denies that it has infringed or is infringing any valid claim of Arlington's patents in this District or anywhere else. Except as expressly admitted, T-Mobile denies the remaining allegations, if any, contained in paragraph 22.

23. T-Mobile admits that T-Mobile USA, Inc. received a letter from David Pridham, Chief Executive Officer of Dominion Harbor, regarding Arlington's patent portfolio on February 10, 2025. T-Mobile admits the letter identified various T-Mobile products and services. T-Mobile

admits that the allegations in Arlington's Complaint in this case include products and services not identified in Mr. Pridham's letter. T-Mobile expressly denies that it or any of its products or services has infringed or is infringing any valid claim of Arlington's patents in this District or anywhere else. Except as expressly admitted, T-Mobile denies the remaining allegations, if any, contained in paragraph 23.

## THE ASSERTED PATENTS AND TECHNOLOGY

24. T-Mobile lacks information sufficient to admit or deny the allegations in paragraph 24, and on that basis, denies them.

25. T-Mobile admits that United States Patent No. 7,193,986 is titled, "Wireless network medium access control protocol," reflects on its face an issuance date of March 20, 2007, and appears to have been filed as United States Patent Application No. 10/158,680 on May 30, 2002. T-Mobile lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations, if any, contained in paragraph 25, and on that basis, denies them.

26. T-Mobile admits that United States Patent No. 7,324,491 is titled, "Method and apparatus for over-the-air bandwidth reservations in wireless networks," reflects on its face an issuance date of January 29, 2008, and appears to have been filed as United States Patent Application No. 10/978,072 on October 28, 2004. T-Mobile lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations, if any, contained in paragraph 26, and on that basis, denies them.

27. T-Mobile admits that United States Patent No. 7,408,925 is titled, "Originator based directing and origination call processing features for external devices," reflects on its face an issuance date of August 5, 2008, and appears to have been filed as United States Patent Application No. 10/846,984 on May 14, 2004. T-Mobile lacks knowledge or information

sufficient to form a belief as to the truth of the remaining allegations, if any, contained in paragraph 27, and on that basis, denies them.

28. T-Mobile admits that United States Patent No. 8,886,789 is titled, "SIP monitoring and control anchor points," reflects on its face an issuance date of November 11, 2014, and appears to have been filed as United States Patent Application No. 12/783,224 on May 19, 2010. T-Mobile lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations, if any, contained in paragraph 28, and on that basis, denies them.

29. T-Mobile admits that United States Patent No. 9,398,055 is titled, "Secure call indicator mechanism for enterprise networks," reflects on its face an issuance date of July 19, 2016, and appears to have been filed as United States Patent Application No. 13/631,123 on September 28, 2012. T-Mobile lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations, if any, contained in paragraph 29, and on that basis, denies them.

30. T-Mobile denies that any claim of any Arlington patent is valid and enforceable as directed toward patent-eligible subject matter under 35 U.S.C. § 101. T-Mobile lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations, if any, contained in paragraph 30, and on that basis, also denies them.

31. T-Mobile denies that Arlington has complies with the requirements of 35 U.S.C. § 287 and further denies that Arlington may recover pre-suit damages. T-Mobile lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations, if any, contained in paragraph 31, and on that basis, also denies them.

## COUNT I – [ALLEGED] INFRINGEMENT OF THE ’986 PATENT

32. T-Mobile incorporates its answers to the foregoing paragraphs as its response to paragraph 32.

33. T-Mobile admits that this case purports to be an action for patent infringement. T-Mobile denies that it has infringed or is infringing any valid claim of Arlington’s patents. Except as expressly admitted, T-Mobile denies the remaining allegations, if any, contained in paragraph 33.

34. T-Mobile lacks knowledge or information sufficient to form a belief as to the truth of the allegations, if any, contained in paragraph 34, and on that basis, denies them.

35. T-Mobile lacks knowledge or information sufficient to form a belief as to the truth of the allegations, if any, contained in paragraph 35, and on that basis, denies them.

36. Denied.

37. Denied.

38. Denied.

39. Denied.

40. Denied.

41. Denied.

42. Denied.

43. Denied.

44. Denied.

45. Denied.

46. Denied.

47. Denied.

**COUNT II – [ALLEGED] INFRINGEMENT OF THE ’491 PATENT**

48. T-Mobile incorporates its answers to the foregoing paragraphs as its response to paragraph 48.

49. T-Mobile admits that this case purports to be an action for patent infringement. T-Mobile denies that it has infringed or is infringing any valid claim of Arlington’s patents. Except as expressly admitted, T-Mobile denies the remaining allegations, if any, contained in paragraph 49.

50. T-Mobile lacks knowledge or information sufficient to form a belief as to the truth of the allegations, if any, contained in paragraph 50, and on that basis, denies them.

51. T-Mobile lacks knowledge or information sufficient to form a belief as to the truth of the allegations, if any, contained in paragraph 51, and on that basis, denies them.

52. Denied.

53. Denied.

54. Denied.

55. Denied.

56. Denied.

57. Denied.

58. Denied.

59. Denied.

60. Denied.

61. Denied

62. Denied

63. Denied

64. Denied

65. Denied.

**COUNT III – [ALLEGED] INFRINGEMENT OF THE '925 PATENT**

66. T-Mobile incorporates its answers to the foregoing paragraphs as its response to paragraph 66.

67. T-Mobile admits that this case purports to be an action for patent infringement. T-Mobile denies that it has infringed or is infringing any valid claim of Arlington's patents. Except as expressly admitted, T-Mobile denies the remaining allegations, if any, contained in paragraph 67.

68. T-Mobile lacks knowledge or information sufficient to form a belief as to the truth of the allegations, if any, contained in paragraph 68, and on that basis, denies them.

69. T-Mobile lacks knowledge or information sufficient to form a belief as to the truth of the allegations, if any, contained in paragraph 69, and on that basis, denies them.

70. Denied.

71. Denied.

72. Denied.

73. Denied.

74. Denied.

75. Denied.

76. Denied.

77. Denied.

78. Denied.

79. Denied.

80. Denied.

81. Denied.

82. Denied.

83. Denied.

84. Denied.

85. Denied.

### COUNT IV – [ALLEGED] INFRINGEMENT OF THE ’789 PATENT

86. T-Mobile incorporates its answers to the foregoing paragraphs as its response to paragraph 86.

87. T-Mobile admits that this case purports to be an action for patent infringement. T-Mobile denies that it has infringed or is infringing any valid claim of Arlington’s patents. Except as expressly admitted, T-Mobile denies the remaining allegations, if any, contained in paragraph 87.

88. T-Mobile lacks knowledge or information sufficient to form a belief as to the truth of the allegations, if any, contained in paragraph 88, and on that basis, denies them.

89. T-Mobile lacks knowledge or information sufficient to form a belief as to the truth of the allegations, if any, contained in paragraph 89, and on that basis, denies them.

90. Denied.

91. Denied.

92. Denied.

93. Denied.

94. Denied.

95. Denied.

96. Denied.

97. Denied.

98. Denied.

99. Denied.

100. Denied.

101. Denied.

102. Denied.

103. Denied.

**COUNT V – [ALLEGED] INFRINGEMENT OF THE ’055 PATENT**

104. T-Mobile incorporates its answers to the foregoing paragraphs as its response to paragraph 105.

105. T-Mobile admits that this case purports to be an action for patent infringement. T-Mobile denies that it has infringed or is infringing any valid claim of Arlington’s patents. Except as expressly admitted, T-Mobile denies the remaining allegations, if any, contained in paragraph 106.

106. T-Mobile lacks knowledge or information sufficient to form a belief as to the truth of the allegations, if any, contained in paragraph 107, and on that basis, denies them.

107. T-Mobile lacks knowledge or information sufficient to form a belief as to the truth of the allegations, if any, contained in paragraph 108, and on that basis, denies them.

108. Denied.

109. Denied.

110. Denied.

111. Denied.

112. Denied.

113. Denied.

114. Denied.

115. Denied.

116. Denied.

117. Denied.

118. Denied.

119. Denied.

120. Denied.

121. Denied.

122. Denied.

123. Denied

**CONCLUSION**

124. No response is required to the Conclusion, but to the extent one is deemed required, T-Mobile denies that Arlington is entitled to recover any damages, reasonably royalty, interest, or costs whatsoever.

125. No response is required to the Conclusion, but to the extent one is deemed required, T-Mobile denies that Arlington is entitled to recover any fees, costs, or expenses, whatsoever.

**[RESPONSE TO] JURY DEMAND**

126. Defendants are not required to provide a response to Arlington's request for a trial by jury. T-Mobile hereby demands a trial by jury on all issues of fact triable by jury.

## [RESPONSE TO] PRAYER FOR RELIEF

127. No response is required to the Prayer for Relief, but to the extent one is deemed required, T-Mobile denies that Arlington is entitled to any relief whatsoever. In addition to a general denial of the allegations contained in paragraph 127, T-Mobile specifically denies all allegations contained in subparagraphs 127(i) through 127(vi).

## GENERAL DENIAL

Except as expressly admitted above, T-Mobile denies each and every allegation in Arlington's Complaint.

## AFFIRMATIVE DEFENSES

Further answering and as additional defenses, T-Mobile states the following. By raising the following additional defenses, T-Mobile does not assume the burden of proof of any issue that, as a matter of law, is Arlington's burden to prove. T-Mobile further does not admit any allegation of the Complaint not otherwise expressly admitted and expressly incorporates the admissions and denials in paragraphs 1 through 127, above. T-Mobile reserves the right to amend or augment these defenses on further investigation and discovery.

### *First Affirmative Defense*

128. The Complaint fails to state facts upon which relief can be granted against T-Mobile.

### *Second Affirmative Defense*

129. T-Mobile has not directly infringed, and is not directly infringing, either literally or under the doctrine of equivalents, any claims of United States Patent Nos. 7,193,986 (the "'986 patent"); 7,324,491 (the "'491 patent"); 7,408,925 (the "'925 patent"); 8,886,789 (the "'789 patent"); or 9,398,055 (the "'055 patent") either literally or under the doctrine of equivalents. T-

Mobile has not induced or contributed to, and is not inducing or contributing to, infringement of the asserted patents either literally or under the doctrine of equivalents.

### *Third Affirmative Defense*

130. One or more claims of the asserted patents are invalid for failure to satisfy one or more conditions of patentability, including without limitation, those set forth in 35 U.S.C. §§ 101, 102, 103, and/or 112.

### *Fourth Affirmative Defense*

131. Arlington's claim for damages, if any, against T-Mobile is statutorily limited, in whole or in part, by the provisions of 35 U.S.C. §§ 287 and/or 288.

### *Fifth Affirmative Defense*

132. Arlington is not entitled to seek, and cannot establish that it is entitled to, enhanced damages or attorneys' fees for willful infringement.

### *Sixth Affirmative Defense*

133. Arlington is estopped by virtue of prior art or conduct and representations during prosecution of the asserted patents from presenting an interpretation of the claims necessary to find infringement by T-Mobile.

### *Seventh Affirmative Defense*

134. Arlington's claims are barred in whole or in part by the equitable doctrines of waiver and unclean hands.

### *Eighth Affirmative Defense*

135. Arlington has not met its obligation to license some or all of the asserted patents on reasonable, and non-discriminatory terms, including (but not limited to) due to the facts and reasons set forth in paragraphs 8 to 52 of T-Mobile USA's counterclaims below.

### *Ninth Affirmative Defense*

136. Arlington's claims may be barred by prior, first-sale licensing agreements to T-Mobile suppliers that exhausted Arlington's rights in the patents.

### *Tenth Affirmative Defense*

137. Plaintiff's claims of infringement of the '055 patent are barred by 28 U.S.C. § 1498(a) because Plaintiff claims infringement by STIR/SHAKEN functionalities T-Mobile operates as required by and on behalf of the United States government and with the authorization or consent of the United States government.

138. Section 1498(a) not only allows the United States government to forcibly license patented inventions—e.g., the '055 patent—during times of need, but also provides immunity to private parties from infringement claims where that party—T-Mobile—is working, expressly or implicitly, on behalf of the U.S. government.

139. For Section 1498(a) immunity to apply to a private party such as T-Mobile, the private party's alleged infringement must be: (1) for the benefit of the government, and (2) with the government's authorization or consent. Meeting these conditions waives the government's sovereign immunity and functions as the government's consent to liability.

140. T-Mobile satisfies these two conditions because it implements the federally mandated STIR/SHAKEN functionalities for the benefit of "[p]rotecting Americans from the dangers of unwanted and illegal robocalls." This functionality is mandated by U.S. Congress and

regulated by the FCC, as explained below. *See* Exhibit A, 1, 4 (Federal Communications Commission Second Report and Order FCC 20-136, adopted Sept. 29, 2020).

141. As the telecommunication industry advanced and expanded into internet protocol (IP)-based calling and Voice over Internet Protocol (VoIP) software provided by a multitude of voice service providers and entities, so did opportunities for bad actors to exploit the trust between entities and across calling networks once controlled by a handful of trusted providers. *Id.*, 4. Such actors began targeting American consumers with illegally spoofed calls. *Id.*

142. To combat spoofed calls, industry leaders and engineers in the Internet Engineering Task Force (IETF) and the Alliance for Telecommunications Industry Solutions (ATIS) developed standards to authenticate and verify caller identification (Caller ID) for calls carried over IP networks using a Session Initiation Protocol (SIP). *Id.*, 4. Specifically, the IETF created a Secure Telephony Identity Revisited (STIR) working group to produce protocols that authenticate caller ID. *Id.*, 4. ATIS and the SIP Forum standardized STIR-produced protocols for implementation across the telecommunication industry using digital certificates codified in a Signature-based Handling of Asserted information using toKENs (SHAKEN) specification. *Id.*, 4. In total, the STIR/SHAKEN framework is a (1) technical process of authenticating and verifying caller ID information and (2) certificate governance process maintaining trust in the caller ID authentication information transmitted with a call. *Id.*, 4-5.

143. Recognizing the harm of robocalls and spoofed calls, in 2019, U.S. Congress passed the Pallone-Thune Telephone Robocall Abuse Criminal Enforcement and Deterrence (TRACED) Act. Exhibit B (Pallone-Thune Telephone Robocall Abuse Criminal Enforcement and Deterrence Act, Pub. L. No. 116-105 (2019) (codified in 47 U.S.C. § 227b) (TRACED Act). Signed into law on December 30, 2019, the TRACED Act directed the Federal Communications Commission

(FCC) to promote and ***require*** voice service providers to implement the SITR/SHAKEN call authentication technology in IP phone networks by June 30, 2021. *Id.*, 3-4 (§§ 4(a)-(b)). The FCC promulgated a rule on April 21, 2020 enforcing the same. 47 CFR § 64.6301 ("STIR/SHAKEN implementation by voice service providers ... not later than June 30, 2021, a voice service provider shall fully implement the STIR/SHAKEN authentication framework in its internet Protocol networks."); *see also* Exhibit A, 3.

144. As an industry leading voice service provider, T-Mobile was the first US carrier to implement the STIR/SHAKEN technology in its networks. Exhibit C, 2–3 (*T-Mobile Completes STIR/SHAKEN with ALL Major Carriers to Help Protect Customers from Scams and Spam*, T-Mobile Newsroom Press Release, March 25, 2021, available at https://www.t-mobile.com/news/network/stir-shaken-all-networks). T-Mobile has initiated and maintained its compliance with government-mandated and FCC regulated STIR/SHAKEN implementation since at least January 2019. *Id.*

145. T-Mobile implements the STIR/SHAKEN technology for the same reason that Congress requires T-Mobile to do so, as part of an attempt to promote public safety. In fact, T-Mobile's incorporation of the STIR/SHAKEN technology is a public service for which T-Mobile receives no revenue—there is no charge to T-Mobile's customers for the implementation of the STIR/SHAKEN technology and the FCC estimates its implementation will save Americans approximately $10 billion annually. Exhibit D, 1 (*FCC Mandates that Phone Companies Implement Caller ID Authentication to Combat Spoofed Robocalls*, FCC News from the Federal Communications Commission, March 31, 2020). T-Mobile verifies over 237 million calls with this technology on a daily basis. Exhibit C, 3.

146. In light of the above directives and mandates from the government, T-Mobile's allegedly infringing activities with respect to the '055 patent and the STIR/SHAKEN technology are for the benefit of the government and with its implied authorization and/or consent. Therefore, T-Mobile is immune from Plaintiff's allegations of patent infringement for at least the '055 patent.

## RESERVATION OF RIGHTS

T-Mobile reserves its right to raise additional defenses including, but not limited to, license, patent exhaustion, waiver, patent misuse, equitable estoppel, and judicial estoppel based on additional information learned during discovery or otherwise.

## T-MOBILE'S DEMAND FOR JURY TRIAL

T-Mobile demands a trial by jury on all issues so triable.

## COUNTERCLAIMS

For its Counterclaims, T-Mobile, USA, Inc. alleges:

1. T-Mobile USA, Inc. ("T-Mobile USA") is a Delaware corporation with its principal place of business in Bellevue, Washington.

2. T-Mobile USA is informed, believes, and therefore alleges that Arlington is a Texas limited liability company with a regular and established place of business in Allen, Texas.

## THE PARTIES

3. T-Mobile USA, Inc. is a Delaware corporation with its principal place of business at 12920 SE 38th Street, Bellevue, Washington 98006.

4. Upon information and belief, Arlington Technologies, LLC is a Texas limited liability company with a principal place of business in Allen, Texas.

## JURISDICTION AND VENUE

5. This is an action for declaratory relief regarding United States patents. This Court has jurisdiction over these counterclaims pursuant to 28 U.S.C. §§ 1331, 1338, and 28 U.S.C. §§ 2201, 2202. An actual, substantial, and continuing justiciable controversy exists between T-Mobile USA and Arlington based on Arlington's multiple assertions of United States Patent Nos. 7,193,986 (the "'986 patent"); 7,324,491 (the "'491 patent"); 7,408,925 (the "'925 patent"); 8,886,789 (the "'789 patent"); or 9,398,055 (the "'055 patent") against T-Mobile USA with respect to which T-Mobile USA requires a declaration of its rights by this Court. Specifically, the controversy concerns the noninfringement and invalidity of the asserted patents and Arlington's right to maintain suit for alleged infringement of the asserted patents.

6. The Court has personal jurisdiction over Arlington, as Arlington has submitted to the personal jurisdiction of this Court by filing its Complaint here.

7. Venue is proper in this Court because Arlington has submitted to the venue of this Court by filing its Complaint here.

## BACKGROUND
### IEEE Letter of Assurance Submission

8. The Institute of Electrical and Electronics Engineers ("IEEE") is a technical professional organization. The IEEE Standards Association ("IEEE SA") is an organization that facilitates standards development and standards related collaboration. This standards-based work includes the IEEE 802 LAN/MAN group of standards used for computer networking, including the 802.11 set of standards that govern Wi-Fi networks and wireless local area networks.

9. The IEEE allows individuals and organizations to submit a Letter of Assurance (LOA) that states the submitter's position regarding the ownership, enforcement, or licensing of Essential Patent Claims of a specific IEEE Standard that is accepted when it has been determined

complete and posted to the IEEE SA website pursuant the IEEE SA Standards Board Bylaws, Clause 6 ("IEEE SA Clause 6," available at https://standards.ieee.org/about/policies/bylaws/sect6-7/).

10. Every LOA binds the entity submitting it, its affiliates, and successors to many specific provisions. *See generally* IEEE SA Clause 6. An LOA "shall apply to the Submitter, including its Affiliates." *Id.* Also, an LOA "is intended to be binding upon any and all assignees and transferees of any Essential Patent claim covered by such LOA." *Id.* Additionally, an LOA "is irrevocable once submitted and accepted and shall apply, at a minimum, from the date of the standard's approval to the date of the standard's transfer to inactive status." *Id.* Further, an LOA gives rise to an obligation to license the alleged essential patents under fair, reasonable, and nondiscriminatory (FRAND) or reasonable and nondiscriminatory (RAND) terms and conditions pursuant that same rule. *Id.* As explained further below, Avaya's successors are bound to the RAND commitment it submitted to IEEE SA because that commitment travels with the '986 and '491 patents upon their assignment to Arlington.

11. In its Complaint, Arlington alleges that T-Mobile USA has infringed and continues to infringe the asserted '986 and '491 patents. Arlington further alleges these patents "support" the IEEE 802.11 standard. *See* Complaint, ¶¶ 32–65.

12. Arlington alleges that it owns the asserted '986 and '491 patents, and the rights to license them, and that those patents are infringed upon usage of particular aspects of IEEE 802.11 standards for WiFi. *See* Complaint, ¶24.

13. The '986 and '491 asserted patents are encumbered by express and voluntary written covenants, declarations, submissions, statements, and/or promises made by Arlington to

IEEE, pursuant to the IEEE-SA Standards Board Bylaws, to license alleged SEPS to any third-party beneficiary and/or user of the standard on reasonable and non-discriminatory terms.

**Arlington's RAND Commitment**

14. T-Mobile USA incorporates by reference its responses in the preceding paragraphs as if fully stated herein.

15. Through a series of assignments, ownership of the asserted '986 patent began with Nortel Networks in 2002 and passed to Avaya, Inc. ("Avaya") in 2009. *See* Exhibit E. Through a similar series of assignments, ownership of the '491 patent began with Avaya Technology, LLC in 2005 and passed to Avaya, Inc. in 2008. *See* Exhibit F. On November 19, 2003—preceding the filings of both the '986 and '491 patents—Dr. Eugene Potkay, Vice President, Intellectual Property of Avaya, Inc., submitted to David L. Ringle, Secretary of the IEEE-SA Standards Board Patent Committee a Letter of Assurance committing Avaya's known, unknown, and pending IEEE 802.11 standard essential patents to RAND licensing. *See* Exhibit G (Avaya Letter of Assurance, or "LOA"). Avaya Inc.'s existing RAND commitment therefore attached to the '986 and '491 patents as soon as Avaya filed them and remain with the patents as presently owned by Arlington.

16. Specifically, Dr. Pokay's submitted LOA stated that "***Avaya Inc.*** may now own or control or later determine that it owns or controls patents, pending applications or applications in development with claims that may be subsequently found ***essential*** in order to practice a fully compliant ***IEE 802.11 standard***" and "Avaya will ***provide licenses*** under any claims of its patents which it owns and controls that are directed to and deemed essential to implementing such IEEE 802.11 standard … ***to any qualified applicant***, upon request at ***reasonable, non-discriminatory terms*** and conditions which may include a royalty." *See* Exhibit G (emphases added).

17. On information and belief, Avaya's letter constitutes an "Accepted Letter of Assurance" with RAND standard essential patent licensing terms, as defined by IEEE SA Clause 6, because it has been posted to the IEEE SA website in "Records of IEEE Standard Related-patent Letters of Assurance" for "IEEE 802.11™ and amendments," available at https://standards.ieee.org/about/sasb/patcom/patents/.

18. On information and belief, Avaya participated in the standard-setting process because the letter stipulated it was "required for Avaya to meet its obligations as a participating member in a particular IEEE 802.11 working subgroup," as stipulated in the accepted LOA. Exhibit G.

19. On information and belief, the standard essential patents described in Avaya's LOA include Arlington's asserted '986 and '491 patents. Through the series of assignments of these patents, Avaya Inc. ultimately assigned the rights and ownership in the '491 and '986 patents to Plaintiff Arlington Technologies, LLC, the effect of which transfers the irrevocable licensing terms Avaya, Inc. submitted for all its known and forthcoming IEEE 802.11 standard essential patent claims to the '491 and '986 asserted patents practicing that standard. *See* Exhibits E–F (assignment histories of the '986 and '491 asserted patents). The IEEE 802.11 standard remains active; therefore, so do Avaya's licensing terms and conditions to the standard and Arlington's assumption of those terms and conditions.

20. On information and belief, Arlington's asserted '986 and '491 patent claims are members of Avaya's standard essential patent claims because those patents are included within Avaya's "patents, pending applications or applications in development" that "Avaya Inc. may now own or control or later determine that it owns or controls," as stipulated in the accepted LOA. *See* Exhibit G.

21. On information and belief, Avaya's LOA includes the '986 and '491 asserted patents because Avaya expressly declined the opportunity to enumerate discrete patents or patent claims that it would license and further declined to include criteria for discriminating between eligible licensing applicants or parties in the accepted LOA. *See* Exhibit G.

22. On information and belief, T-Mobile USA and its affiliates and assignees are constituent members within the class of "any qualified applicant," and therefore an intended third-party beneficiary of Avaya's RAND commitment incurred by Arlington, as stipulated in the accepted LOA. *See* Exhibit G.

23. On information and belief, the IEEE relied on Avaya's accepted LOA to incorporate the allegedly proprietary '986 and '491 technology into the IEEE 802.11 standard on account of Avaya's roles as a "participating member in a particular IEEE 802.11 working subgroup," as stipulated in the accepted LOA. *See* Exhibit G.

**FIRST COUNTERCLAIM**
**Breach of Contract of IEEE Policy Regarding U.S. Patent Nos. 7,193,986 and 7,324,491**

24. T-Mobile USA incorporates by reference its responses in the preceding paragraphs as if fully stated herein.

25. As explained above, Arlington has alleged that the '986 and '491 patent claims asserted in this action are essential to the IEEE 802.111 standard, and Arlington has cited these allegations in its Complaint. *E.g.,* Complaint, ¶¶ 32–65.

26. As set forth above, Avaya entered into express and/or implied contracts with the IEEE's members, or alternatively, with the IEEE to which IEEE members and others that are intended third-party beneficiaries, in which Avaya agreed, among other things, to abide by the IEEE's policies and rules.

27. Avaya made this commitment by submitting an accepted Letter of Assurance to the IEEE pursuant to Rule 6 of the IEEE-SA Standards Board Bylaws.

28. As also set forth above, the terms, conditions, and licensing agreement stipulated in Avaya's accepted and irrevocable LOA transfers in full effect to Arlington for the '986 and '491 patents that Arlington asserts in this suit have been infringed by T-Mobile.

29. Each person (including a company) who distributes products compliant with the IEEE 802.11 standards promulgated by IEEE, its groups and subgroups, and the relevant standards setting organizations is an intended third-party beneficiary of the contractual RAND commitments encumbering Arlington's alleged SEPs, including T-Mobile USA.

30. As a third-party beneficiary, T-Mobile USA relied on Arlington's RAND licensing promises when T-Mobile USA incorporated compliance with wireless local area network connectivity into its products.

31. Arlington had a contractual obligation to offer to license the asserted '986 and '491 IEEE 802.11 standard essential patents on RAND terms.

32. Arlington has breached its obligations to the IEEE and to T-Mobile USA by refusing to offer T-Mobile USA a license to the asserted '986 and '491 IEEE 802.11 SEPs on RAND terms and conditions.

33. Arlington asserts in ¶ 22 of its Complaint that it had attempted to engage Defendant and/or its agents in good faith licensing discussions related to the Asserted Patents by sending a letter dated February 10, 2025 to T-Mobile USA with a general description and appendix listing of Arlington's patent portfolio. That letter listed nine specific patents and referred T-Mobile to a list of 1,586 other patent assets. Arlington's February 10 letter did not notify T-Mobile that the '986 patent or '491 patent were standard-essential patents subject to a RAND commitment.

Arlington's February 10 letter did not refer to Arlington's RAND commitment in any way, nor did it provide any financial offers whatsoever, much less an opening offer to license these patents on RAND terms.

34. On February 26, 2025, Arlington provided T-Mobile with initial presentations regarding the '986 and '491 patents. Those presentations did not provide T-Mobile with any indication that these patents were subject to a RAND commitment.

35. Arlington filed this suit on March 7, 2025, less than one month after sending its opening letter to T-Mobile on February 10, 2025, and only nine days after sending its preliminary presentations to T-Mobile on February 26, 2025. Arlington's Complaint also does not refer to Arlington's RAND commitment for the '986 and '491 patents.

36. Arlington did not notify T-Mobile that the '986 and '491 patents are subject to a RAND obligation until after filing its Complaint. In particular, on March 19, 2025, Arlington provided T-Mobile with a "Rate Card" that stated for the first time in writing that these two patents were subject to RAND obligations.

37. By prematurely hauling T-Mobile USA (and its improperly named affiliates) into court, Arlington has damaged T-Mobile USA (and its improperly named affiliates).

38. On information and belief, Arlington's offered royalty rates are also unreasonably high, particularly in light of the commoditized nature of WiFi products, the concerns regarding the "royalty stack" (i.e., the large number of patents that cover or are alleged to cover products practicing WiFi standards), and the non-foundational nature of the alleged inventions of the asserted '986 and '491 patents.

39. Therefore, Arlington has breached its obligations to the IEEE and T-Mobile USA by failing to negotiate and act in good faith, and by using litigation to obtain leverage in licensing discussions for SEPs.

40. As a result of Arlington's breach of contract, T-Mobile USA has been injured in its business or property, and is threatened by imminent loss of profits, customers, potential customers, goodwill, and product image. For instance, T-Mobile USA has been unable to obtain a license from Arlington on RAND terms and has been forced to defend this lawsuit.

**SECOND COUNTERCLAIM**
**Declaration of Unenforceability for Breach of RAND Obligation**
**Regarding U.S. Patent Nos. 7,193,986 and 7,324,491**

41. T-Mobile USA incorporates by reference its responses in the preceding paragraphs as if fully stated herein.

42. As explained above, Arlington breached its obligations to IEEE and T-Mobile USA by failing to negotiate and act in good faith, and by using litigation to obtain leverage in licensing discussions for SEPs.

43. In its Complaint, Arlington alleges that T-Mobile USA has infringed and continues to infringe the asserted '986 and '491 patents. Arlington further alleges these patents "support" the 802.11 standard. *See* Complaint, ¶¶ 32–65.

44. As set forth above, Arlington entered into express and/or implied contracts with the IEEE's members, or alternatively, with the IEEE to which IEEE members and others are intended third-party beneficiaries, in which Arington agreed, among other things, to abide by the IEEE's policies and rules.

45. Avaya made this commitment by submitting an accepted Letter of Assurance to the IEEE pursuant to Rule 6 of the IEEE-SA Standards Board Bylaws.

46. As also set forth above, the terms, conditions, and licensing agreement stipulated in Avaya's accepted and irrevocable LOA transfers in full effect to Arlington for the '986 and '491 patents that Arlington alleges "support" the 802.11 standard. *See* Complaint, ¶¶ 32–65.

47. Each person (including a company) who distributes products compliant with the IEEE 802.11 standards promulgated by the relevant working groups and subgroups is an intended third-party beneficiary of the contractual RAND commitments encumbering Arlington's alleged SEPs, including T-Mobile USA.

48. As a third-party beneficiary, T-Mobile USA relied on Arlington's RAND licensing promises when it incorporated compliance with wireless local area network connectivity into its products.

49. Arlington has breached its obligation to negotiate in good faith, as set forth above. Arlington has not offered to license the '986 and '491 patents asserted here on RAND terms. To the extent that Arlington's communication on March 18th of its licensing rates can be considered an offer by Arlington, it was not made in good faith. Arlington has further breached its good faith obligations by refusing to negotiate in good faith and has further filed litigation that forced T-Mobile USA to expend time and fees in its defense, seemingly to improperly gain leverage in licensing discussions.

50. Additionally, by its assumption of the obligations and commitments made Avaya's accepted LOA, Arlington committed to abide by the IEEE's policies and rules by participating in 802.11 standard development process. Thus, Arlington and its representatives had a contractual obligation to timely disclose that Arlington was the owner of potential essential patent claims in the '986 and '491 patents asserted here.

51. Yet Arlington and its representatives have breached their obligation to the IEEE, to T-Mobile USA, and to companies like T-Mobile USA by failing to timely disclose that Arlington was the owner of potentially essential patent claims and by otherwise acting in manners inconsistent with its RAND licensing obligations.

52. Arlington's claims of patent infringement against T-Mobile USA show that a real and actual controversy exists. Arlington has not acted in good faith in making their supposedly-RAND licensing offer, including as shown by the short time that it gave T-Mobile USA to react before filing suit. T-Mobile USA is therefore entitled to declaratory relief to remove the cloud of uncertainty surrounding the enforceability of the '986 and '491 patents.

**THIRD COUNTERCLAIM**
**Declaration of Noninfringement of U.S. Patent No. 7,193,986**

53. T-Mobile USA incorporates by reference its responses in the preceding paragraphs as if fully stated herein.

54. Arlington's Complaint alleges that Arlington owns the entire right, title, and interest in the '986 patent.

55. Arlington has alleged and continues to allege that certain T-Mobile USA products and services infringe the '986 patent.

56. T-Mobile USA has not infringed and does not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid and/or enforceable claim of the '986 patent.

57. For example, T-Mobile USA has not infringed and does not infringe any valid and/or enforceable claim of the '986 patent due to divided infringement. Arlington accuses T-Mobile gateways of infringing at least claim 1 of the '986 patent. *See* Complaint, ¶¶37, 39. However, claim 1 of the '986 patent claims a "wireless network device" that uses a "wireless component" and "adaptor" to "implement[] a medium access protocol." At least the different

wireless component and adaptor elements that the ’986 patent requires to implement a medium access protocol implicate products and services from several different companies and entities unaccounted for in Arlington’s Complaint and unattributable to T-Mobile USA.

58. T-Mobile USA therefore seeks a declaration that it has not infringed, and does not infringe, literally or under the doctrine of equivalents, directly or indirectly, any valid and enforceable claim of the ’986 patent.

59. An actual case or controversy exists between Arlington and T-Mobile USA because Arlington asserts that certain T-Mobile USA products and services infringe the ’986 patent even though they do not.

60. Declaratory relief is both appropriate and necessary to establish that T-Mobile USA has not directly or indirectly infringed, literally or under the doctrine of equivalents, any valid claim of the ’986 patents.

**FOURTH COUNTERCLAIM**
**Declaration of Invalidity of U.S. Patent No. 7,193,986**

61. T-Mobile USA incorporates by reference its responses in the preceding paragraphs as if fully stated herein..

62. One or more claims of the ’986 patent are invalid and unenforceable.

63. For example, one or more claims of the ’986 patent are invalid and unenforceable because they recite ineligible patent subject matter per 35 U.S.C. § 101. The claims recite compounding abstract ideas of organizing and manipulating basic informational indicators reflecting time- and sequence-based rules according to basic mathematical sequences and relationships in a process practically performed in the human mind and requiring no more than functional implementation upon a generic wireless network device.

64. To take another example, one or more claims of the ’986 patent are invalid and unenforceable because the claims recite subject matter of indefinite scope per 35 U.S.C. § 112(2). The claims recite means-plus-function nonce terms (“adaptor” and “component”) coupled to functional language (“implementing a medium access protocol”), without disclosing or reciting the requisite definite structure for this function.

65. To take another example, one or more claims of the ’986 patent are invalid and unenforceable because they claim subject matter anticipated and/or rendered obvious under 35 U.S.C. §§ 102, 103. For instance, one or more claims of the ’986 patent are disclosed and/or rendered obvious by prior art including United States Patent No. 5,644,576 to Bauchot, et al. (“Medium Access Control Scheme for Wireless LAN Using a Variable Length Interleaved Time Division Frame”) and United States Patent No. 7,133,396 to Schmidl, et al. (“Dynamic Assignment of Retransmission Slots for Enhanced Quality in Wireless Communication Links”).

66. T-Mobile USA therefore seeks a declaration that one or more claims of the ’986 patent are invalid and unenforceable.

67. An actual case or controversy exists between T-Mobile USA and Arlington based on Arlington having filed the Complaint against T-Mobile USA alleging infringement of claims of the ’986 patent.

68. Declaratory relief is both appropriate and necessary to establish that the ’986 patent is invalid, and thus, cannot be asserted against the accused products.

## FIFTH COUNTERCLAIM
## Declaration of Noninfringement of U.S. Patent No. 7,324,491

69. T-Mobile USA incorporates by reference its responses in the preceding paragraphs as if fully stated herein. Arlington’s Complaint alleges that Arlington owns the entire right, title, and interest in the ’491 patent.

70. Arlington has alleged and continues to allege that certain T-Mobile USA products and services infringe the ’491 patent.

71. T-Mobile USA has not infringed and does not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid and/or enforceable claim of the ’491 patent.

72. For example, T-Mobile USA has not infringed and does not infringe any valid and/or enforceable claim of the ’491 patent due to divided infringement. Arlington accuses T-Mobile routers, a tracker, and a watch of infringing at least claim 1 of the ’491 patent. *See* Complaint, ¶¶53, 55. However, the ’491 patent claims a “method for controlling access to a wireless network” by implementing rules for various “wireless traffic streams” between network devices using steps that requires implementation using a variety of network router, user device, and switching components with respective physical and software access layers (claim 1). At least the many permutations of logic and hardware components that the ’491 patent recites to control network access implicate products and service from different companies and entities unaccounted for in Arlington’s Complaint and unattributable to T-Mobile USA.

73. T-Mobile USA therefore seeks a declaration that it has not infringed, and does not infringe, literally or under the doctrine of equivalents, directly or indirectly, any valid and enforceable claim of the ’491 patent.

74. An actual case or controversy exists between Arlington and T-Mobile USA because Arlington asserts that certain T-Mobile USA products and services infringe the ’491 patent even though they do not.

75. Declaratory relief is both appropriate and necessary to establish that T-Mobile USA has not directly or indirectly infringed, literally or under the doctrine of equivalents, any valid claim of the ’491 patent.

**SIXTH COUNTERCLAIM**
**Declaration of Invalidity of U.S. Patent No. 7,324,491**

76. T-Mobile USA incorporates by reference its responses in the preceding paragraphs as if fully stated herein.

77. One or more claims of the ’491 patent are invalid and unenforceable.

78. For example, one or more claims of the ’491 patent are invalid and unenforceable because they recite ineligible patent subject matter under 35 U.S.C. § 101. The claims recite compounding abstract ideas regarding organizing and manipulating basic medium access protocol information with mathematical prioritization using a process practically performed in the human mind and no more than functional implementation via processor-readable mediums.

79. To take another example, one or more claims of the ’491 patent are invalid and unenforceable because the claims recite subject matter of indefinite scope under 35 U.S.C. § 112(2). The claims recite subjective terms for steps to “assure quality of service for designated traffic” and “requiring streams … wanting to communicate” without establishing the metes and bounds needed to measure how to “assure” quality of service or what delineates a “want” to communicate.

80. To take another example, one or more claims of the ’491 patent are invalid and unenforceable because they claim subject matter anticipated and/or rendered obvious under 35 U.S.C. §§ 102, 103. For instance, one or more claims of the ’491 patent are disclosed and/or rendered obvious by prior art including United States Patent No. 6,785,252 to Zimmerman, et al. (“Method and Apparatus for a Self-Correcting Bandwidth Request/Grant Protocol in a Wireless Communication System), United States Patent No. 9,398,055 to Brunson, et al. (“Secure Call Indicator Mechanism for Enterprise Networks”), and/or articles by Mangold, et al. explaining Quality of Service support in wireless LANs compliant with the IEEE 802.11 standard.

81. An actual case or controversy exists between T-Mobile USA and Arlington based on Arlington having filed the Complaint against T-Mobile USA alleging infringement of claims of the ’491 patent.

82. Declaratory relief is both appropriate and necessary to establish that the ’491 patent is invalid and, thus, cannot be asserted against the accused products.

**SEVENTH COUNTERCLAIM**
**Declaration of Noninfringement of U.S. Patent No. 7,408,925**

83. T-Mobile USA incorporates by reference its responses in the preceding paragraphs as if fully stated herein. Arlington’s Complaint alleges that Arlington owns the entire right, title, and interest in the ’925 patent.

84. Arlington has alleged and continues to allege that certain T-Mobile USA products and services infringe the ’925 patent.

85. T-Mobile USA has not infringed and does not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid and/or enforceable claim of the ’925 patent.

86. For example, T-Mobile USA has not infringed and does not infringe any valid and/or enforceable claim of the ’925 patent due to divided infringement. Arlington accuses T-Mobile Voice over LTE (VoLTE) services of infringing at least claim 1 of the ’925 patent. *See* Complaint, ¶¶71, 73. However, the ’925 patent claims a “method for setting up a communication” using a “first directing server” and “communication manager separate from the first directing server (claim 1). At least the different network and server elements of the ’925 patent implicate products and services from different companies and entities unaccounted for in Arlington’s Complaint and unattributable to T-Mobile USA.

87. T-Mobile USA therefore seeks a declaration that it has not infringed, and does not infringe, literally or under the doctrine of equivalents, directly or indirectly, any valid and enforceable claim of the ’925 patent.

88. An actual case or controversy exists between Arlington and T-Mobile USA because Arlington asserts that certain T-Mobile US products and services infringe the ’925 patent even though they do not.

89. Declaratory relief is both appropriate and necessary to establish that T-Mobile USA has not directly or indirectly infringed, literally or under the doctrine of equivalents, any valid claim of the ’925 patents.

**EIGHTH COUNTERCLAIM**
**Declaration of Invalidity of U.S. Patent No. 7,408,925**

90. T-Mobile USA incorporates by reference its responses in the preceding paragraphs as if fully stated herein.

91. One or more claims of the ’925 patent are invalid and unenforceable.

92. For example, one or more claims of the ’925 patent are invalid and unenforceable because they recite ineligible patent subject matter in contravention of 35 U.S.C. § 101. The claims recite compounding abstract ideas regarding organizing and manipulating basic communication setup, routing, and termination information management steps practically performed in the human mind and requiring no more than functional implementation upon a generic network architecture.

93. To take another example, one or more claims of the ’925 patent are invalid and unenforceable because the claims recite subject matter of indefinite scope in contravention of 35 U.S.C. § 112(2). The claims recite a limiting preamble including “a first directing server and first communication manager separate from the first directing server” (claim 1). However, the ’925 patent does not provide the ascertainable metes or bounds of “separate” and what physical, logical,

or other distinction the term intends; therefore, the claimed configuration of server and commination components cannot be ascertained.

94. To take another example, one or more claims of the ’925 patent are invalid and unenforceable because they claim subject matter anticipated and/or rendered obvious under 35 U.S.C. §§ 102, 103. For example, one or more claims of the ’925 patent are disclosed and/or rendered obvious by prior art including United States Patent No. 7,120,141 to Kikinis (“Integrating SIP Control Messaging into Existing Communication Center Routing Infrastructure”).

95. An actual case or controversy exists between T-Mobile USA and Arlington based on Arlington having filed the Complaint against T-Mobile USA alleging infringement of claims of the ’925 patent.

96. Declaratory relief is both appropriate and necessary to establish that the ’925 patent is invalid and, thus, cannot be asserted against the accused products.

**NINTH COUNTERCLAIM**
**Declaration of Noninfringement of U.S. Patent No. 8,886,789**

97. T-Mobile USA incorporates by reference its responses in the preceding paragraphs as if fully stated herein.

98. Arlington’s Complaint alleges that Arlington owns the entire right, title, and interest in the ’789 patent.

99. Arlington has alleged and continues to allege that certain T-Mobile USA products and services infringe the ’789 patent.

100. T-Mobile USA has not infringed and does not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid and/or enforceable claim of the ’789 patent.

101. For example, T-Mobile USA has not infringed and does not infringe any valid and/or enforceable claim of the ’789 patent due to divided infringement. Arlington accuses T-

Mobile Voice over LTE (VoLTE) services of infringing at least claim 1 of the '789 patent. *See* Complaint, ¶¶91, 93. However, the '789 patent claims establishing communications between a "first" and "second communication device network device" and "Back-to-Back User Agent" (claim 1). These different network and device elements of the '789 patent implicate products and services from different companies and entities unaccounted for in Arlington's Complaint and unattributable to T-Mobile USA.

102. T-Mobile USA therefore seeks a declaration that it has not infringed, and does not infringe, literally or under the doctrine of equivalents, directly or indirectly, any valid and enforceable claim of the '789 patent.

103. An actual case or controversy exists between Arlington and T-Mobile USA because Arlington asserts that certain T-Mobile USA products and services infringe the '789 patent even though they do not.

104. Declaratory relief is both appropriate and necessary to establish that T-Mobile USA has not directly or indirectly infringed, literally or under the doctrine of equivalents, any valid claim of the '789 patent.

**TENTH COUNTERCLAIM**
**Declaration of Invalidity of U.S. Patent No. 8,886,789**

105. T-Mobile USA incorporates by reference its responses in the preceding paragraphs as if fully stated herein.

106. One or more claims of the '789 patent are invalid and unenforceable.

107. For example, one or more claims of the '789 patent are invalid and unenforceable because they recite ineligible patent subject matter in contravention of 35 U.S.C. § 101. The claims recite compounding abstract ideas regarding organizing and manipulating basic communication

session sequencing information between users in a process practically performed in the human mind with no more than functional implementation upon a generic server-based system.

108. To take another example, one or more claims of the ’789 patent are invalid and unenforceable because the claims recite subject matter of indefinite scope in contravention of 35 U.S.C. § 112(2). The ’789 patent claims “wherein the at least one anchor point monitors and controls the communication session for an application to leverage during the communication session[.]” However, the ’789 patent does not provide the ascertainable metes or bounds of the subjective term “leverage” and what physical, logical, or other distinction the term intends; therefore, the claimed configuration of server and commination components cannot be ascertained.

109. To take another example, one or more claims of the ’789 patent are invalid and unenforceable because they claim subject matter anticipated and/or rendered obvious under 35 U.S.C. §§ 102, 103. Specifically, one or more claims of the ’789 patent are disclosed and/or rendered obvious by prior art including United States Patent No. 7,787,414 to La Faucheur, et al. (“Reserving Network Resources for a Communication Session”).

110. An actual case or controversy exists between T-Mobile USA and Arlington based on Arlington having filed the Complaint against T-Mobile USA alleging infringement of claims of the ’789 patent.

111. Declaratory relief is both appropriate and necessary to establish that the ’789 patent is invalid and, thus, cannot be asserted against the accused products.

**ELEVENTH COUNTERCLAIM**
**Declaration of Noninfringement of U.S. Patent No. 9,398,055**

112. T-Mobile USA incorporates by reference its responses in the preceding paragraphs as if fully stated herein.

113. Arlington's Complaint alleges that Arlington owns the entire right, title, and interest in the '055 patent.

114. Arlington has alleged and continues to allege that certain T-Mobile USA products and services infringe the '055 patent.

115. T-Mobile USA has not infringed and does not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid and/or enforceable claim of the '055 patent.

116. T-Mobile USA has not infringed and does not infringe any valid and/or enforceable claim of the '055 patent due to divided infringement. Arlington accuses a cellular network that includes STIR/SHAKEN call verification of infringing at least claim 1 of the '055 patent. *See* Complaint, ¶¶110, 112. However, the '055 patent expressly claims a "first" and "second communication device" external and separate to a "microprocessor" executing several logic steps (claim 1). At least the arrangement of these three components including two communication devices of the '055 patent implicate products and services from different companies and entities unaccounted for in Arlington's Complaint and unattributable to T-Mobile USA.

117. T-Mobile USA therefore seeks a declaration that it has not infringed, and does not infringe, literally or under the doctrine of equivalents, directly or indirectly, any valid and enforceable claim of the '055 patent.

118. An actual case or controversy exists between Arlington and T-Mobile USA because Arlington asserts that certain T-Mobile USA products and services infringe the '055 patent.

119. Declaratory relief is both appropriate and necessary to establish that T-Mobile USA has not directly or indirectly infringed, literally or under the doctrine of equivalents, any valid claim of the '055 patent.

## TWELFTH COUNTERCLAIM
## Declaration of Invalidity of U.S. Patent No. 9,398,055

120. T-Mobile USA incorporates by reference its responses in the preceding paragraphs as if fully stated herein.

121. One or more claims of the ’055 patent are invalid and unenforceable.

122. For example, one or more claims of the ’055 patent are invalid and unenforceable because they recite ineligible patent subject matter in contravention of 35 U.S.C. § 101. The claims recite compounding abstract ideas regarding organizing and manipulating fundamental chain-of-custody informational attributes in a process practically performed in the human mind with no more than functional implementation upon a generic computer and telephone system.

123. To take another example, one or more claims of the ’055 patent are invalid and unenforceable because the claims recite subject matter of indefinite scope under 35 U.S.C. § 112(2). The ’055 patent claims recite functional language: “checking trust of a leg of a communication session, wherein the security check inspects each leg of the communication session to determine that each leg of the communication session has passed the security check” (claim 1). However, the ’789 patent does not provide the ascertainable metes or bounds of a “leg” or what physical, logical, or other distinction delineates one leg from another; therefore, how to check the trust of each leg of a communication session in a way that passes a security check cannot be ascertained.

124. To take another example, one or more claims of the ’055 patent are invalid and unenforceable because they claim subject matter anticipated and/or rendered obvious under 35 U.S.C. §§ 102, 103. For instance, United States Patent No. 7,852,783 to Tasker, et al. (“Identify a Secure End-to-End Call”) discloses and/or suggests the claims.

125. An actual case or controversy exists between T-Mobile USA and Arlington based on Arlington having filed the Complaint against T-Mobile USA alleging infringement of claims of the ’055 patent.

126. Declaratory relief is both appropriate and necessary to establish that the ’055 patent is invalid and, thus, cannot be asserted against the Accused Products.

**PRAYER FOR RELIEF**

Wherefore, T-Mobile USA prays for the following relief:

A. That Arlington’s Complaint be dismissed with prejudice;

B. That all remedies and relief sought by Arlington be denied;

C. That judgment be entered declaring the ’986 and ’491 patents unenforceable due to bad faith RAND licensing behaviors and violations of RAND licensing obligations;

D. That judgment be entered that T-Mobile USA has not directly or indirectly infringed any valid claim of the Asserted Patents, either literally or under the doctrine of equivalents;

E. That judgment be entered declaring that the asserted patents are invalid or unenforceable; and

F. That the Court enter the following additional judgments: (1) awarding T-Mobile its costs incurred in the prosecution and defense of this action and any related action; (2) awarding T-Mobile USA damages for Arlington’s breach of its RAND licensing commitments; (3) declaring this case to be exceptional under 35 U.S.C. § 285, and awarding T-Mobile its reasonable attorneys’ fees and costs incurred in the prosecution and defense of this action and any related action; and (4) awarding T-Mobile such other and further relief as the Court may deem just and proper.

DATED: May 28, 2025

By: */s/ Amanda Tessar*
Amanda Tessar,
CO Bar No. 33173
**PERKINS COIE LLP**
1900 Sixteenth Street, Suite 1400 Denver, Colorado 80202-5255 Telephone: (303) 291-2357
Facsimile: (303) 291-2457
Email: ATessar@perkinscoie.com

Martin E. Gilmore
Texas Bar No. 24125080
**PERKINS COIE LLP**
405 Colorado Street, Suite 1700
Austin, Texas 78701
Telephone: (737) 256-6100
Facsimile: (737) 256-6300
Email: MGilmore@perkinscoie.com

Eric Maas
CA Bar No. 345450
**PERKINS COIE LLP**
11452 El Camino Real, Sute 300
San Diego, CA 92130
Telephone: (858) 720-5700
Facsimile: (858) 720-5799
Email: EMaasA@perkinscoie.com

Melissa R. Smith
Texas Bar No. 24001351
**GILLAM & SMITH, LLP**
303 South Washington Avenue Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
Email: Melissa@gillamsmithlaw.com

ATTORNEYS FOR DEFENDANTS
T-MOBILE US, INC., T- MOBILE USA, INC., SPRINT LLC, SPRINT SOLUTIONS LLC, AND SPRINT SPECTRUM LLC

## CERTIFICATE OF SERVICE

I hereby certify that on My 28, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record for the parties.

By: */s/ Amanda Tessar*
Amanda Tessar